IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED W. HEBNER, | No. C 05-4268 MMC (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| BARRY J. O'NEILL, et al., | **(Docket No. 24)** |
| Defendants. | |

On October 20, 2005, plaintiff, a California prisoner incarcerated at Pelican Bay State Prison ("PBSP") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. §§ 1983 and 1985(3). On March 30, 2006, the Court dismissed the complaint with leave to amend; on May 4, 2006, plaintiff filed an amended complaint. On December 11, 2006, after reviewing the amended complaint, the Court found plaintiff had stated cognizable claims for relief against three PBSP officials, specifically, Associate Warden Barry J. O'Neill, Captain C. Patten, and Deputy Warden Jacquez; in that same order the Court directed defendants to file a dispositive motion or, in the alternative, a notice indicating defendants are of the opinion such a motion is not warranted.

On April 11, 2007, defendants filed a motion to dismiss the amended complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the ground plaintiff had failed to exhaust his administrative remedies. Plaintiff thereafter filed an opposition, and defendants filed a reply. The Court, having read and considered the papers filed in support of and in opposition to the motion, rules as follows.

## FACTUAL BACKGROUND

According to the allegations in the amended complaint, on November 2, 2003, plaintiff was involved in a fight with another inmate in the B-Facility at PBSP. (Amen. Compl. at 3.) Thereafter, plaintiff appeared before the Institutional Classification Committee ("ICC"), and was told that because he had enemies in the A-Facility at PBSP he would be transferred back to the B-Facility. (Id.) Despite plaintiff's objection that he would be placed at risk of serious harm if he was returned to the B-Facility, he nevertheless was returned to the same housing unit in the B-Facility. (Id.) Subsequently, plaintiff was transferred to administrative segregation, where he again appeared before the ICC. (Id. at 4.) At his ICC appearance, plaintiff told Associate Warden O'Neill ("O'Neill") and Captain Patten ("Patten") that he had enemies in both the A-Facility and the B-Facility at PBSP, and asked for a transfer to another prison facility due to safety concerns. (Id.) O'Neill and Patten denied the transfer request and sent plaintiff back to the B-Facility. (Id.)

On July 30, 2004, plaintiff was assaulted by two inmates. (Id.) After receiving medical treatment, he was placed in administrative segregation and again appeared before the ICC. (Id. at 5.) At his ICC appearance plaintiff again asked O'Neill and Patten for a transfer due to safety concerns; O'Neill and Patten again denied the transfer request and sent plaintiff back to the general population in the B-Facility. (Id.) Subsequently, plaintiff was written up for threatening another inmate; he was sent to administrative segregation, then returned to the general population, then sent to the Psychiatric Services Unit. (Id.)

On June 24, 2005, plaintiff was returned to administrative segregation. He again appeared before the ICC and requested a transfer due to safety concerns; he was told he would be interviewed and placed on a waiting list. (Id. at 6.) Plaintiff was interviewed on October 24, 2005, and on November 23, 2005 he again appeared before the ICC. (Id.) At his ICC appearance plaintiff told Deputy Warden Jacquez that he needed a transfer and could not be sent back to the B-Facility due to safety concerns. (Id.) Jacquez nevertheless sent plaintiff back to the B-Facility where, on December 7, 2005, plaintiff was stabbed and beaten by other inmates. (Id.)

In its order of the service, the Court found plaintiff's allegations stated cognizable claims against O'Neill, Patten and Jacquez for deliberate indifference to plaintiff's safety, and for retaliation and conspiracy. (Order of Service, filed Dec. 11, 2006, at 1.)

**DISCUSSION**

A.  Standard of Review

Nonexhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion. Id. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20.[1] If the court concludes the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the complaint without prejudice. Id. at 1120.

B.  The Exhaustion Requirement

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA") provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and not left to the discretion of the district court. Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. Porter v. Nussle, 534 U.S. 516, 524 (2002).

The State of California provides its prisoners and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those

---

[1] If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop a record. Id. at 1120 n.14. Plaintiff was given such notice by this Court in the Order of Service.

3

individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, (2) first formal written appeal on a CDC 602 inmate appeal form, (3) second formal level appeal to the institution head or designee, and (4) third formal level appeal to the Director of the California Department of Corrections and Rehabilitation ("Director"). See Barry v Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). See id. at 1237-38.

The exhaustion requirement cannot be satisfied, however, by the filing of an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 126 S. Ct. at 2382. Rather, "proper exhaustion" of available administrative remedies is required. Id. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." See id. at 2386 (footnote omitted); see also Jones v. Bock, 127 S. Ct. 910, 923 (2007) (holding prison's grievance process defines boundaries of proper exhaustion).

C.   Analysis

Defendants argue plaintiff did not exhaust his administrative remedies because he did not receive a decision from the Director's level of review concerning any of the claims he raises in the amended complaint.

In support of their argument, defendants submit a declaration by N. Grannis ("Grannis"), Chief of the Inmate Appeals Branch ("IAB") at the California Department of Corrections and Rehabilitation. According to Grannis, the IAB keeps an electronic database containing information about each inmate administrative appeal that has been addressed at the Director's level of review. (Decl. N. Grannis Supp. Mot. Dismiss ("Grannis Decl.") ¶ 2.) Grannis has attached to his declaration the IAB computer printout of a report showing each inmate appeal filed by plaintiff since 1997 at the Director's level of review; the report lists

which of plaintiff's appeals were addressed at the Director's level of review, and which were screened out, i.e., rejected, at the Director's level of review. (Id. ¶ 3 & Ex. A.) The report shows that none of plaintiff's appeals was addressed at the Director's level of review subsequent to November 2, 2003, the date of the first incident alleged in the amended complaint. (Id. ¶ 4.)

Defendants also submit a declaration by C.E. Wilber ("Wilber"), an Appeals Coordinator at PBSP. As part of his duties, Wilber monitors the computer database in the PBSP inmate appeals office. (Decl. C.E. Wilber Supp. Mot. Dismiss ("Wilber Decl.") ¶ 1.) According to Wilber, the computer database tracks all of the formal inmate appeals that are filed at PBSP and proceed through the first and second levels of review. (Id. ¶ 3.) Wilber has attached to his declaration a printout from the computer database showing plaintiff's inmate appeals history at PBSP. The report lists three appeals filed by plaintiff subsequent to November 2, 2003 concerning plaintiff's claims that he should not be returned to the B-Facility and should be transferred due to safety concerns; all three appeals were screened out for procedural reasons. (Id. ¶ 6 & Ex. A.) According to Wilber, if a prisoner challenges the screening out of an appeal, it is the habit and custom of the inmate appeals office to make a notation in the prisoner's inmate appeals history under the relevant appeal. (Id. ¶ 7.) Wilber reviewed plaintiff's inmate appeals history and found no notation that indicated plaintiff had challenged the screening out of any of the three appeals concerning his safety and transfer claims. (Id. ¶ 7 & Ex. A.) The inmate appeals office does not keep a copy of screened-out appeals. (Wilber Decl. Supp. Reply ¶ 5.)

In his opposition to the motion to dismiss, plaintiff does not dispute that none of his appeals concerning the claims at issue in this action was addressed on the merits at the Director's level of review. Rather, he argues the Court should allow his claims to proceed because: (1) the three appeals he filed at PBSP, along with a fourth appeal he filed when he was temporarily housed at the California Medical Facility in Vacaville ("CMF"), evidence his good-faith efforts to exhaust his administrative remedies concerning the matters at issue in this action, and (2) no further administrative remedies were available to him after his

5

appeals were screened out. (Opp. ¶¶ 45-50.)

In reply, defendants argue plaintiff's claims must be dismissed because he did not properly exhaust his administrative remedies, and the means to do so remained available to him.

In order to determine whether plaintiff's claims have been exhausted, the Court now reviews the four appeals at issue.

1. <u>CMF Appeal</u>

At some point after plaintiff was returned to the B-Facility at PBSP following his November 2, 2003 fight with another inmate, he was moved temporarily to the CMF for psychiatric care. (Opp. Ex. A.) On February 23, 2004, while at the CMF, plaintiff filed at the informal level of review an appeal asking that he not be transferred back to PBSP, and that he either be allowed to remain at the CMF or transferred to another prison. (Id.) According to a declaration submitted by Michael Cry, ("Cry"), the Appeals Coordinator at the CMF, the appeal was screened out on February 27, 2004 because it exceeded the fifteen-working-days time limit for filing an administrative appeal. (Decl. M. Cry Supp. Reply ("Cry Decl.") ¶ 4.) See Cal. Code Regs. tit. 15, § 3084.6(c) (providing inmate must submit appeal "within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision").[2] According to Cry, the CMF computer database shows that plaintiff did not resubmit the screened-out appeal or file any other appeal concerning the screened-out appeal. (Cry Decl. ¶ 7.)

Defendants argue the CMF appeal was not properly exhausted because it was rejected as untimely at the first level of review and plaintiff did not pursue the appeal to the Director's level of review. Plaintiff does not claim the CMF appeal was improperly rejected as untimely under § 3084.6(c), nor does he claim he pursued and received a decision on the merits of the appeal at the Director's level of review. Accordingly, the Court finds plaintiff failed to properly exhaust the CMF appeal.

---

[2] Unless otherwise noted, all further references to code sections are to title 15 of the California Code of Regulations.

6

### 2. First PBSP Appeal

On November 10, 2004, after plaintiff had returned from the CMF and was housed in the Psychiatric Services Unit ("PSU") at PBSP, plaintiff filed an appeal at the informal level of review asking that he either be kept in the Enhanced Outpatient Program ("EOP") in the PSU or transferred to another psychiatric program, because he had been "getting into problems on the mainline with Mexicans." (Opp. Ex. B.) In his opposition plaintiff claims the appeal was returned to him without a response, that he resubmitted it on December 1, 2004, and that it was again returned to him without a response. (Opp. ¶¶ 20-21.) In opposition, defendants have submitted evidence that the appeal was responded to on November 18, 2004, when it was screened out because it concerned an anticipated action or decision, specifically, a health care transfer decision that had not yet occurred. (See Mot. Dismiss at 5:6-8; Decl. D. Robert Duncan Supp. Mot. Dismiss ("Duncan Decl.") Ex. B; Wilber Decl. Supp. Reply ¶ 4); see also § 3084.3(c)(3) (providing appeal may be rejected when it concerns "an anticipated action or decision"). Plaintiff does not assert he attempted to pursue the appeal any further after it was returned to him for the second time, and defendants' records contain no evidence that plaintiff continued to pursue the appeal after it was screened out. (See Decl. C.E. Wilbur Supp. Mot. Dismiss ("Wilbur Decl.") ¶¶ 6, 7.)

Defendants argue the appeal was not properly exhausted because it was rejected on procedural grounds under § 3084.3(c)(3) and plaintiff did not pursue the appeal to the Director's level of review. Plaintiff submits no declaration, nor does he offer any other evidence, to the contrary. Moreover, the record supports defendants' position. Specifically, in addition to the above-cited evidence submitted by defendants, the record shows that after plaintiff filed his first appeal at the informal level of review on November 10, 2004, he received the appeal form back, with a stamped date of receipt of November 18, 2004 and with no written determination on the merits contained in the section of the form used for that purpose. (Opp. ¶ 17 & Ex. B.) According to other evidence submitted by plaintiff, an appeal returned in this manner is consistent with an appeal having been rejected on procedural grounds. In particular, when an appeal is rejected on procedural grounds, the form is

7

stamped with the date of receipt, the "Staff Response" section is left blank, and the form is returned to the prisoner along with a separate form explaining the procedural deficiency. (See Opp. Ex. D (informal level appeal filed December 11, 2005, returned with stamped date of receipt of December 14, 2005 and no written response on merits); see also id. (inmate appeals screening form stamped with same date of receipt, stating "your appeal is being returned for the following reason(s)" and rejecting appeal on procedural grounds).)[3] Moreover, on December 1, 2004, plaintiff filed an objection to the returned appeal, in which he did not complain that he had never received a response. Rather, on the back of the returned form, he wrote:

> I am dissatisfied being I have submitted a reasonable argument to remain in EOP being that there has already been an attack before and there's already reason to believe a repeat of situation.

(Opp. Ex. B.)[4] The appeal form was again returned to plaintiff, with a stamped date of receipt of December 3, 2004. Plaintiff does not claim he pursued the appeal any further after it was returned to him for the second time.

In sum, plaintiff has submitted no evidence to dispute defendant's evidence that plaintiff's appeal was returned to him after it was rejected on procedural grounds and that plaintiff did not thereafter obtain a decision on the appeal from the Director's level of review. Accordingly, the Court finds plaintiff failed to properly exhaust the first PBSP appeal.

3. Second PBSP Appeal

On April 7, 2005, plaintiff filed at PBSP an appeal at the informal level of review, asking that he either be transferred to another prison or placed on a "sensitive needs" yard because of the assault that had occurred on July 30, 2004. (Opp. Ex. C.) On April 25, 2005, the appeal was screened out under § 3084.6(c) for exceeding the fifteen-working-days time

---

[3] Plaintiff did not include an inmate appeals screening form in Exhibit B to his opposition. He submits no evidence, however, that such form was not sent to him with his returned first PBSP appeal, and, as set forth infra, the record supports a finding that he did receive such explanation.

[4] Plaintiff's response is consistent with his response to another rejection on procedural grounds. (See Opp. Ex D (informal level appeal filed December 11, 2006, with plaintiff's objection written on back of form).)

8

limit. (Id.) On May 11, 2005, plaintiff was told he would be scheduled for an ICC review, at which time a determination would be made regarding his future housing needs. (Id.) On May 18, 2005, plaintiff filed a second level appeal concerning his transfer request, to which appeal he attached a letter to the PBSP Warden, stating he had been to his ICC review and believed he would not be transferred to a safe facility. (Id.) On June 16, 2005, the appeal was screened out at the second level of review because plaintiff had not provided a credible explanation for not submitting the original appeal within the fifteen-working-days time limit. (Opp. ¶ 28 & Ex. D.) Plaintiff then submitted the appeal to the Director's level of review; in response Grannis, Chief of the IAB, wrote a letter to plaintiff rejecting the appeal because plaintiff had not completed the second level of review before proceeding to the Director's level of review. (Opp. ¶ 28 & Ex. C.) See §§ 3084.5(c), 3084.7(d)(4)(B) (requiring prisoners to complete second level of review before filing third-level appeal unless appeal concerns involuntary transfer to California Medical Facility or Atascadero State Hospital). The letter advised plaintiff to consult with the Appeals Coordinator if he disagreed with the second-level decision rejecting the appeal as untimely. (Id.)

Defendants argue the second PBSP appeal was not properly exhausted because it was rejected at the first and second levels of review as untimely under § 3084.6(c), and then was rejected at the Director's level of review as improperly filed due to the lack of a second level decision. In response to defendants' argument, plaintiff argues the second level appeal was improperly rejected as untimely; in particular, plaintiff claims, the first level appeal was not rejected because it was untimely, as defendants assert, but because it lacked adequate documentation. Consequently, plaintiff concludes, the second level appeal should not have been rejected as untimely, because such rejection relied on the fact that plaintiff had not filed a timely first level appeal. The documents plaintiff attaches and relies upon in support of his opposition do not substantiate his assertions, however. Specifically, plaintiff attaches a copy of the first level appeal screening form that was issued on April 25, 2005 in response to plaintiff's first level appeal; on the form, a box is checked next to the notation that the appeal is being rejected because it exceeds the fifteen-working-days time limit. (Opp. Ex. C.)

9

Further, at the bottom of the form, the following statement is written in the "Comments" section :

> Your attachments do not support any recent actions regarding your transfer that would be within time limits for appeal. If you have safety concerns that are not being addressed currently contact your CCII or the Capt. or Lt.

(Id.)

Based on the information contained in the first level appeal screening form, the Court finds plaintiff's first level appeal was rejected as untimely. Consequently, plaintiff's argument that the second level appeal was improperly rejected as untimely is without merit. Plaintiff does not otherwise argue that the first or second level appeals were improperly rejected, nor does he contend his appeal to the Director's level was improperly rejected for lack of a decision at the second level. Accordingly, the Court finds plaintiff failed to properly exhaust the second PBSP appeal.

        4.       Third PBSP Appeal

On December 11, 2005, plaintiff filed at PBSP an appeal at the informal level of review, asking that he be transferred because he had been attacked in the B-Facility on December 7, 2005. (Opp. Ex. D.) On January 3, 2006, the appeal was screened out and returned to plaintiff because he had failed to attach the proper supporting documentation. (Id.) See § 3084.3(c)(5) (providing appeal may be rejected if "necessary supporting documents are not attached.") Plaintiff resubmitted the appeal; it was received by the PBSP appeals coordinator on March 14, 2006, and on March 28, 2006, the appeal was again screened out because plaintiff still had not attached the proper supporting documentation. (Opp. Ex. D.)

Defendants argue the appeal was not properly exhausted because it was rejected twice as procedurally defective and plaintiff did not receive a decision on the merits of the appeal from the Director's level of review. Plaintiff does not deny that he failed to attach the proper documentation to his appeals; he claims, however, that the first appeal, which he filed on December 11, 2005, was improperly rejected because he would not have been able to obtain the necessary documents within the fifteen-working-days time limit for filing an appeal.

Plaintiff's assertion is without merit because it is wholly conclusory; plaintiff never claims he attempted to obtain the necessary documents before he filed the appeal only four days into the fifteen-working-days time limit. (Opp. ¶ 39 & Ex. D.) Moreover, plaintiff does not contend the March 2006 appeal was improperly rejected under § 3084.3(c)(3), nor does he claim he pursued and received a decision on the merits of the appeal at the Director's level of review. Accordingly, the Court finds plaintiff failed to properly exhaust the third PBSP appeal.

In sum, having reviewed the four administrative appeals plaintiff filed concerning safety and transfer issues, the Court finds persuasive defendants' argument that none of those appeals served to exhaust plaintiff's administrative remedies with respect to the claims raised in the amended complaint.

Plaintiff argues that even if his claims were not properly exhausted they should be allowed to proceed because of his good-faith efforts to comply with the administrative appeals process. Plaintiff's assertedly good-faith efforts do not satisfy the exhaustion requirement, however. The Supreme Court made clear in Woodford that exhaustion is mandatory and no longer left to the discretion of the district court. See Woodford, 126 S. Ct. at 2382. Consequently, because the Court has found that plaintiff did not properly exhaust all of his available administrative remedies before filing suit, his claims must be dismissed. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). Even if a prisoner's good faith effort could suffice to relieve him of his obligation to exhaust his administrative remedies, however, plaintiff's showing herein would be inadequate. As defendants point out, if plaintiff required any assistance in pursuing his administrative remedies, he could have sought such assistance from the Appeals Coordinator. (Wilber Decl. Supp. Reply ¶ 6; Cry Decl. Supp. Reply ¶ 6).

Accordingly, the Court will grant defendants' motion to dismiss the amended complaint.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the amended complaint is

hereby GRANTED, and the above-titled action is hereby DISMISSED without prejudice to plaintiff's refiling his claims after all available administrative remedies have been exhausted.

This order terminates Docket No. 24.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: February 13, 2008

                                            MAXINE M. CHESNEY
                                            United States District Judge